NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

GERALD RICHARDSON, *Appellant.*

No. 1 CA-CR 19-0429

FILED 12-15-2020

Appeal from the Superior Court in Mohave County
No. S8015CR201801820
The Honorable Derek C. Carlisle, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Law Offices of Harriette P. Levitt, Tucson
By Harriette P. Levitt
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Cynthia J. Bailey joined.

---

**C A T T A N I**, Judge:

¶1 Gerald Richardson appeals his conviction and sentence for one count of reckless manslaughter. He argues that the evidence was insufficient to support the jury's verdict and that the court erred by precluding evidence of his character for peacefulness and by improperly instructing the jury. For reasons that follow, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 Richardson lived in Golden Valley with his girlfriend and her ten-year-old daughter, M.K. In October 2018, Jessica O. picked up M.K. to spend time with Jessica O.'s ten-year-old nephew, J.K. Neither Richardson nor his girlfriend were sure whether M.K. would return home that night or spend the night at Jessica O.'s home.

¶3 After Jessica O. and the children spent the day together, the three arrived at Richardson's home around 9:30 p.m. to drop off M.K. Both Richardson and his girlfriend were asleep in the living room at the time. Jessica O. and the children approached the home and noticed that no lights were on. Richardson's front door was unlocked, and Jessica O. tried to open the door slightly three times. After the second attempt, Richardson's dogs began barking.

¶4 Richardson awoke and grabbed a gun that he kept near the couch on which he was sleeping. In what Richardson described as an attempt to scare away someone he perceived to be an intruder, he fired at the door. The bullet struck Jessica O. in the back, and she fell to the ground. When Richardson discovered that he had shot her, he called the police, who responded to the scene with paramedics. Jessica O. was transported to the hospital, but doctors were unable to revive her, and she was pronounced dead.

¶5 Richardson was indicted on one count of reckless manslaughter for killing Jessica O., the victim.[1] After a four-day trial, the jury found him guilty as charged. The jury also found that the State proved that the offense was dangerous and that the victim's immediate family suffered emotional harm. The court sentenced Richardson to a presumptive term of 10.5 years in prison. Richardson timely appealed, and we have jurisdiction under A.R.S. § 13-4033(A)(1).

## DISCUSSION

### I. Sufficiency of the Evidence.

¶6 Richardson first argues that the evidence presented at trial was insufficient to support his conviction. We review the sufficiency of the evidence de novo. *State v. Dunbar*, 249 Ariz. 37, 47, ¶ 19 (App. 2020). "We will reverse a conviction only if no substantial evidence supports it." *State v. Morgan*, 248 Ariz. 322, 325, ¶ 7 (App. 2020). "Substantial evidence is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *Id.* (quoting *State v. Mathers*, 165 Ariz. 64, 67 (1990)). "We resolve any conflicts in the evidence against the defendant and view all facts in the light most favorable to supporting the verdict." *State v. Pena*, 235 Ariz. 277, 279, ¶ 5 (2014).

¶7 As relevant here, "[a] person commits manslaughter by . . . [r]ecklessly causing the death of another person." A.R.S. § 13-1103(A)(1). A person acts recklessly when the "person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists." A.R.S. § 13-105(10)(c).

¶8 Richardson specifically argues that no evidence in the record established that he *consciously* disregarded the risk of harm to another. We disagree.

---

[1] Richardson was also indicted on two counts of child endangerment. He subsequently moved the superior court to remand to the grand jury for a redetermination of probable cause, arguing that the State did not adequately instruct the grand jury on justification defenses. After the superior court denied the motion, Richardson petitioned this court for special action relief. We granted relief in part and ordered the superior court to dismiss the two endangerment counts and remand for a redetermination of probable cause. After the dismissal, the State did not, however, re-present the case to the grand jury.

¶9 A jury may infer from the evidence that a defendant consciously disregarded a risk of harm to others, and here, the evidence presented at trial supported such an inference. *See State v. Carreon*, 210 Ariz. 54, 63, ¶¶ 40–43 (2005), *supplemented by* 211 Ariz. 32 (describing circumstantial evidence from which the jury could infer a conscious disregard of a substantial risk of harm). It was undisputed that Richardson shot and killed the victim after being startled awake that night. In his statement to an officer, Richardson stated that the room was entirely black at the time, and he did not see who he was firing at. Although Richardson stated that he was trying to "scare away" an intruder, he did so not by shouting a warning or firing a shot into the ground, but by firing through the door at an angle such that he hit the victim in the back. Further, it was only 9:30 p.m., and Richardson's girlfriend testified that she believed Richardson was aware that her daughter had not yet returned home. The State was permitted to rely on this circumstantial evidence to establish a conscious disregard, and a reasonable jury could infer that Richardson knew at the time of the shooting that he was creating a substantial risk of harm. *See State v. McGill*, 213 Ariz. 147, 153, ¶ 19 (2006); *State v. Miles*, 211 Ariz. 475, 482, ¶ 27 (App. 2005).

¶10 Moreover, Richardson's counsel conceded during closing argument that Richardson committed "a reckless shooting"; Richardson's defense was that the shooting was justified. Richardson's argument on appeal that he "merely reacted to an intruder coming into his home when he had no reason to believe that anyone was supposed to come to his house after he had retired for the night" conflates the elements of recklessness with those of his justification defense. *See State ex rel. Thomas v. Duncan*, 216 Ariz. 260, 265, ¶ 17 (App. 2007) ("Being 'aware' of the risk and the 'justifiability' of the risk are also separate and distinct inquiries.").

¶11 In sum, substantial evidence supports the jury's finding that Richardson recklessly caused the victim's death.

## II. Character for Peacefulness.

¶12 Richardson next argues that the superior court erred by precluding evidence of his character for peacefulness. We review the exclusion of evidence for an abuse of discretion. *State v. Fuentes*, 247 Ariz. 516, 524, ¶ 27 (App. 2019). A defendant may offer evidence of his or her good character trait as substantive evidence that he or she did not commit the crime. *State v. Rhodes*, 219 Ariz. 476, 478, ¶ 10 (App. 2008). However, that character trait must be relevant to the crime charged. *See* Ariz. R. Evid. 402. Accordingly, evidence of a defendant's good character trait will be

admissible only if it pertains to a trait involved in the crime. *Rhodes*, 219 Ariz. at 479, ¶ 10.

¶13 Richardson argues that because he was charged with reckless manslaughter, he was entitled to present evidence that he was generally a nonviolent person to prove his justification defense and negate the State's claim he was reckless.

¶14 As discussed above, a defendant is guilty of manslaughter if he or she recklessly causes the death of another. A.R.S. § 13-1103(A)(1). Richardson consistently admitted that he shot and killed the victim. His defense was that shooting the victim was justified under the circumstances, and he sought to introduce evidence of his nonviolent character to establish that recklessly causing the death of another was out of character. But a personal character for peacefulness was not relevant to address justification, because justification is assessed based on what a reasonable person would have done under similar circumstances. *See Cespedes v. Lee*, 243 Ariz. 46, 50, ¶ 15 (2017) ("Generally, an objective standard is used in determining whether a defendant's use of force was reasonable."). Thus, Richardson's alleged peaceful character was not relevant to the jury's determination of how a reasonable person would have responded under the circumstances. *See* Ariz. R. Evid. 401(a).

## III. Jury Instructions.

¶15 Finally, Richardson argues that the court improperly instructed the jury that the victim was an invitee. We review the superior court's decision whether to give a jury instruction for an abuse of discretion. *Dunbar*, 249 Ariz. at 45, ¶ 30. A party is entitled to a jury instruction reasonably supported by the "slightest evidence." *State v. Almeida*, 238 Ariz. 77, 79, ¶ 9 (App. 2015).

¶16 Richardson's argument relies on a mischaracterization of the superior court's instruction. Contrary to Richardson's assertions, the superior court did not "h[o]ld that [the victim] was an invitee," nor did the court "essentially instruct[] the jury that [the victim] was an invitee." Instead, the court instructed the jury:

> The defendant is presumed to reasonably believe that the threat or use of physical force or deadly force is immediately necessary if the defendant knows or has reason to believe that the person against whom physical force or deadly force is threatened or used is unlawfully or forcefully entering or has

unlawfully or forcefully entered and is present in the defendant's residential structure.

For the purposes of justification, a person who is unlawfully or forcefully entering or who has unlawfully or forcefully entered and is present in a residential structure is presumed to pose an imminent threat of unlawful deadly harm to any person who is in the residential structure.

These presumptions do *not* apply if:

The person against whom the physical force or deadly physical force was threatened or used had the right to be in or was a lawful resident of the residential structure, including an invitee.

¶17    Here, the evidence presented at trial supported the invitee instruction, namely, Richardson's girlfriend's testimony that the victim and J.K. were always welcome at the house. The jury could have relied on that statement, along with M.K.'s testimony that the victim had dropped her off at the home in the past and that the door was unlocked that night when it would usually be locked, to conclude the victim was an invitee.

¶18    Moreover, the invitee status of the victim and J.K. notwithstanding, the instruction at issue did not preclude Richardson from arguing that he did not know who was outside the door and that his conduct was reasonable and justified under the circumstances presented. The instruction only precluded Richardson from asserting that there was a presumption that his conduct was reasonable. Accordingly, the court did not err or otherwise deny Richardson a right essential to his defense by instructing the jury regarding the effect of an invitee attempting to enter the residence.

## CONCLUSION

¶19    For the foregoing reasons, we affirm.

